JULY 6, 1983

No. 81–2008.   PROCESS GAS CONSUMERS GROUP ET AL. *v.* CONSUMER ENERGY COUNCIL OF AMERICA ET AL.;

No. 81–2020.   INTERSTATE NATURAL GAS ASSOCIATION OF AMERICA ET AL. *v.* CONSUMER ENERGY COUNCIL OF AMERICA ET AL.;

No. 81–2151.   PETROCHEMICAL ENERGY GROUP *v.* CONSUMER ENERGY COUNCIL OF AMERICA ET AL.;

No. 81–2171.   AMERICAN GAS ASSN. *v.* CONSUMER ENERGY COUNCIL OF AMERICA ET AL.;

No. 82–177.   UNITED STATES SENATE *v.* CONSUMER ENERGY COUNCIL OF AMERICA ET AL.;

No. 82–209.   UNITED STATES HOUSE OF REPRESENTATIVES *v.* CONSUMER ENERGY COUNCIL OF AMERICA ET AL.;

No. 82–935.   UNITED STATES SENATE *v.* FEDERAL TRADE COMMISSION ET AL.; and

No. 82–1044.   UNITED STATES HOUSE OF REPRESENTATIVES *v.* FEDERAL TRADE COMMISSION ET AL.   C. A. D. C. Cir.   Judgment in Nos. 81–2008, 81–2020, 81–2151, and 81–2171 affirmed.   JUSTICE REHNQUIST would note probable jurisdiction and set cases for oral argument.   JUSTICE POWELL took no part in the consideration or decision of these appeals.   Certiorari in Nos. 82–177 and 82–209 denied.   JUSTICE POWELL took no part in the consideration or decision of these petitions.   Judgment in Nos. 82–935 and 82–1044 affirmed.   JUSTICE REHNQUIST would note probable jurisdiction and set cases for oral argument.   Motion of Charles Pashayan, Jr., et al. for leave to file a brief as *amicus curiae* in No. 82–1044 granted.   Reported below: Nos. 81–2008, 81–2020, 81–2151, 81–2171, 82–177, and 82–209, 218 U. S. App. D. C. 34, 673 F. 2d 425; Nos. 82–935 and 82–1044, 223 U. S. App. D. C. 386, 691 F. 2d 575.

JUSTICE WHITE, dissenting.

The principal issue in these cases is the constitutionality of the legislative veto as applied to agency rulemaking. Given the Court's recent decision in *INS* v. *Chadha*, 462 U. S. 919 (1983), the summary affirmance of the Court of Appeals' decisions striking the veto as unconstitutional is hardly surprising. These cases illustrate the constitutional myopia of the *Chadha* reasoning as applied to independent regulatory agencies and cast further light on the destructiveness of the *Chadha* holding.

In *Process Gas Consumers Group* v. *Consumer Energy Council of America*, 218 U. S. App. D. C. 34, 673 F. 2d 425 (1982), the Court of Appeals invalidated the one-House legislative veto provision of the Natural Gas Policy Act of 1978 (NGPA), contained in § 202(c) of the Act, 92 Stat. 3372, 15 U. S. C. § 3342(c) (1982 ed.). The NGPA was a response to the need for financial incentives to encourage the production of natural gas for the interstate market. The Act was a compromise, reached only after months of impasse between the two Houses over the optimal means of deregulating natural gas prices while preventing excessive fuel bills for consumers and industry. Congress finally settled on a phased deregulation of natural gas prices, with a system of incremental pricing to ease the transition. Specifically, the compromise agreed to by the Conference Committee provided for an initial experiment with incremental pricing for a small class of industrial users, while authorizing the Federal Energy Regulatory Commission to propose expansion of incremental pricing to other industrial users at a later time. This proposal would be submitted to Congress and would become effective unless disapproved by either House. The veto provision was central to this accommodation, because it allowed the Congress to observe the effects of the initial phase of incremental pricing without committing the Nation to a broader program which, it was feared, would drive industrial gas users to oil,

increasing the demand for imported oil, and raising the cost of gas for residential consumers. The Conference solution allowed the House and Senate to reach agreement and the NGPA was enacted.*

In *United States Senate* v. *FTC*, 223 U. S. App. D. C. 386, 691 F. 2d 575 (1982), the Court of Appeals struck down § 21(a) of the Federal Trade Commission Improvements Act of 1980, 94 Stat. 393, 15 U. S. C. § 57a-1 (1982 ed.), which provides that an FTC trade regulation rule shall become effective unless both Houses of Congress disapprove it. The Act authorizes the Commission to issue trade regulation rules which define unfair or deceptive acts or practices in or affecting commerce. 15 U. S. C. § 57a(a)(1)(B) (1982 ed.). For three years, Congress debated the breadth of the Commission's rulemaking authority, noting that the FTC could, pursuant to the Act, "regulate virtually every aspect of America's commercial life." 124 Cong. Rec. 5012 (1978) (Rep. Broyhill). The two-House veto provision was settled upon as a means of allowing Congress to study and review the broad and important policy pronouncements of the Commission.

I cannot agree that the legislative vetoes in these cases violate the requirements of Art. I of the Constitution. Where the veto is placed as a check upon the actions of the independent regulatory agencies, the Art. I analysis relied upon in *Chadha* has a particularly hollow ring. In *Buckley* v. *Valeo*, 424 U. S. 1 (1976), I set forth my belief that the legislative veto as applied to rules promulgated by an independent regulatory agency fully comports with the Constitution.

---

*These cases also present the important question of whether the legislative veto is severable from the authorization for FERC to issue an expanded interim pricing rule. There is no severability clause in the NGPA, an omission which itself suggests the inseverability of the provision, see *Carter* v. *Carter Coal Co.*, 298 U. S. 238, 313 (1936), and much of the legislative history suggests that Congress would not have granted the Commission unfettered rulemaking authority. See, *e. g.*, 124 Cong. Rec. 29662–29663 (1978) (comments of Sen. Percy).

"[F]or a regulation to become effective, neither House need approve it, pass it, or take any action at all with respect to it. The regulation becomes effective by non-action. This no more invades the President's powers than does a regulation not required to be laid before Congress. Congressional influence over the substantive content of agency regulation may be enhanced, but I would not view the power of either House to disapprove as equivalent to legislation or to an order, resolution, or vote requiring the concurrence of both Houses." *Id.*, at 284–285.

"Disapproval nullifies the suggested regulation and prevents the occurrence of any change in the law. The regulation is void. Nothing remains on which the veto power could operate. It is as though a bill passed in one House and failed in another." *Id.*, at 285, n. 30.

The Court's opinion in *Chadha* has not convinced me otherwise. Congress, with the President's consent, characteristically empowers the agencies to issue regulations. These regulations have the force of law without the President's concurrence; nor can he veto them if he disagrees with the law that they make. The President's authority to control independent agency lawmaking, which on a day-to-day basis is nonexistent, could not be affected by the existence or exercise of the legislative veto. To invalidate the device, which allows Congress to maintain some control over the lawmaking process, merely guarantees that the independent agencies, once created, for all practical purposes are a fourth branch of the Government not subject to the direct control of either Congress or the Executive Branch. I cannot believe that the Constitution commands such a result. For these reasons and for those expressed in my dissenting opinion in *INS* v. *Chadha,* I respectfully dissent.