**UNITED BEVERAGE COMPANY OF SOUTH BEND, INC. and National Beer Wholesalers Association, Inc., Plaintiffs-Appellants,**

v.

**INDIANA ALCOHOLIC BEVERAGE COMMISSION, et al., Defendants-Appellees.**

No. 83–2635.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 7, 1984.

Decided April 22, 1985.

George E. Herendeen, Voor, Allen, Fedder, Herendeen & Kowals, South Bend, Ind., for plaintiffs-appellants.

Frank A. Baldwin, Indianapolis, Ind., for defendants-appellees.

Before CUDAHY and POSNER, Circuit Judges, and SWYGERT, Senior Circuit Judge.

POSNER, Circuit Judge.

This is not an antitrust case, but it has its roots in antitrust law. In *United States v. Arnold, Schwinn & Co.*, 388 U.S. 365, 375–80, 87 S.Ct. 1856, 1863–66, 18 L.Ed.2d 1249 (1967), the Supreme Court held that a manufacturer who limited the territories in which his dealers could resell goods bought from him committed a per se violation of the Sherman Act. But manufacturers could still assign "areas of primary responsibility" to their dealers and require a dealer to cultivate his area of primary responsibility, albeit the dealer could not be forbidden to sell outside the area. Ten years later the Court overruled *Schwinn* and held that prohibitions imposed by manufacturers against dealers' selling outside of assigned territories were unlawful only if unreasonable. *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977). Indiana's Alcoholic Beverage Commission, apparently unhappy with *Sylvania*, in 1979 promulgated a rule, "Rule 28" as it is called, which in subsection (3) forbids the producers of such beverages to "restrict by agreement or otherwise, the sale or resale of liquor, wine, beer or malt beverages to a given geographical area or to permittees, who are otherwise entitled to buy, within a given geographical area. This section shall not be deemed to prohibit the designation of an 'area of primary responsibility', however, efforts to restrict sales to only the designated area of primary responsibility are deemed to be prohibited." 905 Ind.Adm. Code 1–28–1.

United Beverage Company, an Indiana beer wholesaler, and the trade association to which it belongs brought this suit in a federal district court against the Commission and its members to enjoin the enforcement of Rule 28(3) as contrary both to the United States Constitution and to state law. The district court granted summary judgment for the defendants and the plaintiffs appeal. 566 F.Supp. 650. The nature of the association's interest in this case is unclear, but if its member, United Beverage, has standing, so, under current con-

ceptions of standing, does it. *Sierra Club v. Morton,* 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972). United Beverage's interest is based on its uncontradicted allegation that Anheuser-Bush would give it an exclusive territory in Indiana but for Rule 28(3); it therefore has something tangible to gain if it can get the rule enjoined.

Apart from two frivolous contentions (that the term "area of primary responsibility"—long a term of art in antitrust law, see, e.g., *White Motor Co. v. United States,* 372 U.S. 253, 270–72 and n. 12, 83 S.Ct. 696, 705–07 and n. 12, 9 L.Ed.2d 738 (1963) (concurring opinion)—is unconstitutionally vague and that the case should not have been resolved at the summary-judgment stage), United Beverage argues only that the Alcoholic Beverage Commission exceeded its authority under Indiana law, which, so far as relevant to this case, empowers the Commission to issue rules governing "the conduct of the business of a permittee" and "the prevention of fraud, evasion, trickery, or deceit...." Indiana Code §§ 7.1–2–3–7(c), (g). United Beverage casts this argument as both a federal and a state claim. (We need not consider the wholesalers' association—a "silent partner" in United's suit—separately.) The state claim is that Rule 28(3) exceeds the Commission's statutory powers and, alternatively, that for the legislature to delegate such vaguely defined powers to an administrative agency violates the Indiana constitution. The federal claim is that an uncanalized delegation of legislative power to an administrative agency violates the Fourteenth Amendment.

The usual sequence in considering issues of state law and of federal constitutional law is to address the former first, in the hope of avoiding having to decide the latter. In this case, however, the federal constitutional issues are easier than the state law issues; a decision on the state law issues would entangle us in delicate questions of internal state governance; and we shall see that once United's federal grounds are rejected, the entire case must be dismissed, leaving United free if it

wants to pursue the state law issues in state court, where they belong.

■ United assumes that there is a general federal constitutional doctrine limiting a *state* legislature's delegation of legislative authority to an administrative agency. There is not.

■ The traditional concept of unlawful delegation of legislative authority by the United States Congress, a concept that reached its high-water mark in *Panama Refining Co. v. Ryan,* 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935), and *A.L.A. Schechter Poultry Corp. v. United States,* 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935), that had seemed dead for many years afterward, see *National Cable Television Ass'n v. United States,* 415 U.S. 336, 352–54, 94 S.Ct. 1146, 1155–57, 39 L.Ed.2d 370 (1974) (concurring and dissenting opinion), but that has been showing fitful signs of life recently, see, e.g., *id.* at 342, 94 S.Ct. at 1149 (majority opinion); *Industrial Union Dept. v. American Petroleum Institute,* 448 U.S. 607, 673–76, 100 S.Ct. 2844, 2879–81, 65 L.Ed.2d 1010 (1980) (Rehnquist, J., concurring); *id.* at 646, 100 S.Ct. at 2866 (plurality opinion); *Muller Optical Co. v. EEOC,* 743 F.2d 380, 388–89 (6th Cir.1984); *Consumer Energy Council of America v. FERC,* 673 F.2d 425, 448 n. 82 (D.C.Cir.1982), aff'd without opinion under the name of *Process Gas Consumers Group v. Consumer Energy Council,* 463 U.S. 1216, 103 S.Ct. 3556, 77 L.Ed.2d 1402 (1983), is not based on the idea of due process of law in the Fifth Amendment (taken over and applied against the states in the Fourteenth Amendment), but on the constitutional separation of powers. Article I vests the legislative power in the Congress, Article II the executive power in the President, and Article III the judicial power in the federal courts; so if Congress delegates legislative power to another branch, or to a hybrid of other branches such as an "independent" administrative agency, there is a delegation issue, though one in modern times invariably resolved in favor of the delegation.

But the Constitution nowhere requires the states to have a tripartite system of government, *Whalen v. United States*, 445 U.S. 684, 689 n. 4, 100 S.Ct. 1432, 1436, n. 4, 63 L.Ed.2d 715 (1980) (dictum); *Mayor v. Educational Equality League*, 415 U.S. 605, 615 and n. 13, 94 S.Ct. 1323, 1330 and n. 13, 39 L.Ed.2d 630 (1974); *Ware v. Gagnon*, 659 F.2d 809, 812 (7th Cir.1981), though the contrary was assumed (without discussion—maybe the point hadn't been raised) in *Pierce v. Parratt*, 666 F.2d 1205 (8th Cir.1981).

It is true that all the states now have such a system (at the time the Constitution was adopted many of the states had virtually a one-branch government—the one branch being the legislature), and it is true that state courts tend to be stricter about limiting state legislative delegation than federal courts are about limiting federal legislative delegation. See 1 Davis, Administrative Law Treatise § 3.14 (2d ed. 1978 and 1982 Supp.); Linde, Bunn, Paff & Church, Legislative and Administrative Processes 477–78 (2d ed. 1981). But in general the separation of powers is less stringently observed at the state level (in particular, most state judges lack guarantees of independence from the other branches comparable to those that Article III gives federal judges), for the excellent reason that the danger of concentrated political power that called forth the separation of powers at the federal level is much less acute at the state level. If you didn't like Huey Long's Louisiana, you could move to a different state; tyranny at the federal level is more difficult to escape. It is therefore not surprising that the framers of the Constitution did not force the states to imitate the structure of the federal government. Although the wording of Article IV, section 4, guaranteeing the states a republican form of government, assumes that states have at least two branches, legislative and executive, the Supreme Court held in *Highland Farms Dairy, Inc. v. Agnew*, 300 U.S. 608, 612, 57 S.Ct. 549, 551, 81 L.Ed. 835 (1937), that undue delegation of legislative power by a state does not violate the republican-guarantee clause and

that in any event the clause does not create justiciable rights. The latter is a proposition for which there is much other authority, see, e.g., *Baker v. Carr*, 369 U.S. 186, 218–26, 82 S.Ct. 691, 710–15, 7 L.Ed.2d 663 (1962), though also some dissent, see, e.g., *Kohler v. Tugwell*, 292 F.Supp. 978, 984–85 (E.D.La.1968) (opinion of two judges of three-judge district court), aff'd without opinion, 393 U.S. 531, 89 S.Ct. 879, 21 L.Ed.2d 755 (1969). We are in any event bound by *Highland Farms Dairy, Inc. v. Agnew*: and we add that the due process clause of the Fourteenth Amendment has not been interpreted to compel the states to imitate the structure of the federal government, either.

It is true that delegation arguments are sometimes made, and occasionally succeed, in federal constitutional challenges to state action. But only in special contexts:

1. One of the premises of the void-for-vagueness doctrine is that an excessively vague statute promotes arbitrary and discriminatory law enforcement by delegating (too much) power to law-enforcement officers. See, e.g., *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972); *Baer v. City of Wauwatosa*, 716 F.2d 1117, 1124 (7th Cir.1983).

2. The doctrine that forbids a state, pursuant to a collective bargaining agreement with a union of its employees, to force them to contribute money to the union's political and ideological causes, see, e.g., *Abood v. Detroit Bd. of Education*, 431 U.S. 209, 222–23, 97 S.Ct. 1782, 1792–93, 52 L.Ed.2d 261 (1977); *Hudson v. Chicago Teachers Union Local No. 1*, 743 F.2d 1187, 1190–91 (7th Cir.1984), may have an implicit nondelegation premise. States are allowed to use tax funds to support many of the same causes—for example, the encouragement or discouragement of abortion. See *Maher v. Roe*, 432 U.S. 464, 477, 97 S.Ct. 2376, 2384, 53 L.Ed.2d 484 (1977).

An alternative explanation of the *Abood* line of cases assimilates them to:

3. Cases involving procedural safeguards that the courts, being unwilling to

countenance broad delegations of the power to regulate speech and other expression, have insisted accompany efforts to control pornography or otherwise regulate in the neighborhood of the First Amendment. See, e.g., *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150–51, 89 S.Ct. 935, 938–39, 22 L.Ed.2d 162 (1969); *Baughman v. Freienmuth*, 478 F.2d 1345, 1350 (4th Cir.1973).

4. It has been argued that state action impinging on specific federal constitutional rights such as free speech and freedom from racial discrimination should be evaluated more skeptically the lower the defendant is in the state hierarchy (e.g., a local school board versus the state legislature). See, e.g., Bickel, *The Supreme Court, 1960 Term, Foreword: The Passive Virtues*, 75 Harv.L.Rev. 40, 63, 67–68 (1961); Sandalow, *Racial Preferences in Higher Education: Political Responsibility and the Judicial Role*, 42 U.Chi.L.Rev. 653, 695–96 (1975). Some judges have accepted the argument, see, e.g., *Barenblatt v. United States*, 360 U.S. 109, 139–40 and n. 7, 79 S.Ct. 1081, 1099–1100 and n. 7, 3 L.Ed.2d 1115 (1959); some have rejected it, see, e.g., *Sweezy v. New Hampshire*, 354 U.S. 234, 256, 77 S.Ct. 1203, 1214, 1 L.Ed.2d 1311 (1957) (concurring opinion); *Menora v. Illinois High School Ass'n*, 683 F.2d 1030, 1036 (7th Cir.1982); and one has stood it on its head, and suggested that the more local the authority is, the looser the reins should be, see *Minnesota State Bd. for Community Colleges v. Knight*, 465 U.S. 271, 104 S.Ct. 1058, 1071, 79 L.Ed.2d 299 (1984) (concurring opinion).

5. State or local referenda are sometimes attacked as improper, because standardless, delegations of legislative power. See *City of Eastlake v. Forest City Enterprises, Inc.*, 426 U.S. 668, 671–72, 96 S.Ct. 2358, 2361–62, 49 L.Ed.2d 132 (1976); *Philly's v. Byrne*, 732 F.2d 87 (7th Cir.1984); *Silverman v. Barry*, 727 F.2d 1121, 1126 (D.C.Cir.1984). These attacks have invariably failed in modern cases (their former success is illustrated by *Washington ex rel. Seattle Title Trust Co. v. Roberge*, 278 U.S. 116, 121–22, 49 S.Ct. 50, 51–52, 73

L.Ed.2d 210 (1928)), except where the delegation was to a religious organization. See *Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, 122–27, 103 S.Ct. 505, 510–12, 74 L.Ed.2d 297 (1982).

6. Delegation can violate due process in a quite elementary sense. If the state delegated to a mob the decision whether to punish a person for crime, there would be no doubt that due process had been violated. See *Moore v. Dempsey*, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543 (1923) (Holmes, J.); cf. *Hornsby v. Allen*, 326 F.2d 605, 610 (5th Cir.1964). This was the analytical framework in which we considered the liquor-referendum law in *Philly's v. Byrne, supra*, 732 F.2d at 91–94. But notice that the issue is not too much delegation, but delegation to the wrong body: delegation of judicial decision-making, for example, to people who are not judges. It would be no better if the legislature retained the power to punish for crime itself; a legislative punishment is a bill of attainder, forbidden to the states by Article I, section 10 of the Constitution.

■ From all this it can be seen that there is no independent federal constitutional doctrine of excessive delegation of state legislative power but that such a doctrine is sometimes used as an ancillary protection for free speech and other specific rights that the Constitution protects. If this is correct, there is no merit to United Beverage Company's federal claim. The underlying right—to sell beer without competition from other dealers in the same brand—is not a right conferred or protected by the Constitution; indeed, the states have, by virtue of the Twenty-First Amendment, broader authority over the liquor business than over any other business, see, e.g., *Battipaglia v. New York State Liquor Authority*, 745 F.2d 166, 168–70 (2d Cir.1984) (Friendly, J.), though of course not plenary authority, see, e.g., *Bacchus Imports, Ltd. v. Dias*, —— U.S. ——, 104 S.Ct. 3049, 3058, 82 L.Ed.2d 200 (1984). And there is no claim of unfair procedure to bring into play the constitutional guar-

antee against depriving a person of his property (assuming without having to decide that an exclusive territory for distributing beer would be property) without due process of law.

The next question is whether Rule 28(3) exceeds the Alcoholic Beverage Commission's authority, whether statutory or constitutional, under state law. The district court held that it does not, but we think the court should not have addressed the merits of the question. The Supreme Court said in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), that when a district court dismisses the plaintiff's federal claim before trial, it should dismiss any pendent state law claim as well. (The state law claim in this case is a pendent claim; there is no diversity jurisdiction.) As we said recently, "the considerations of judicial economy that underlie pendent jurisdiction are but weakly engaged when the federal claim drops out so soon." *Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 187 (7th Cir.1984). As with all legal generalizations, there are exceptions, for example where the statute of limitations has run on the pendent claim. Cf. *American National Bank & Trust Co. v. Bailey*, 750 F.2d 577, 581 (7th Cir.1984). But none of the exceptions is applicable here. On the contrary, considerations of comity and federalism argue for the federal courts' avoiding whenever possible getting involved in delicate issues concerning the internal structure of state government. The district court should have relinquished its pendent jurisdiction over the plaintiffs' state law claim. Ordinarily we would remand to give the district court a chance to exercise its discretion to decide whether to retain the state law claim, as in *Buethe v. Britt Airlines, Inc.*, 749 F.2d 1235, 1242 (7th Cir.1984), where remand was additionally necessary to determine whether there might be diversity of citizenship. But if the outcome on remand is foreordained—if it would be an abuse of discretion for the district judge to retain the state law claim—no purpose would be served by remanding; and that is the case here.

The judgment of the district court is affirmed insofar as it dismisses the plaintiffs' federal claim on the merits, but is modified to dismiss their state law claims for lack of federal jurisdiction.

MODIFIED AND AFFIRMED.