Michael C. McCLOUGH, Appellant,

v.

UNITED STATES, Appellee.

No. 84–850.

District of Columbia Court of Appeals.

Argued Oct. 30, 1986.
Decided Jan. 21, 1987.

Reginia L. Jackson, Washington, D.C., appointed by this court, for appellant.

David A. Reisner and Gail M. Mooney also entered appearances for appellant.

Michael W. Farrell, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Keith A. O'Donnell, Asst. U.S. Atty., Washington, D.C., were on brief, for appellee.

John H. Suda, Acting Corp. Counsel, D.C., at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, D.C., Appellate Div., Washington, D.C., were on brief for amicus curiae District of Columbia.

Before MACK, FERREN, and ROGERS, Associate Judges.

ROGERS, Associate Judge:

In this appeal, appellant Michael McClough, who has been convicted of possessing preludin with intent to distribute, contends that because D.C.Code § 1–205(b) (1981) is unconstitutional under *Immigration and Naturalization Service v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), his mandatory minimum sentence of twenty months to five years pursuant to § 33–541(a)(1) (1986 Supp.) is invalid. The mandatory minimum sentencing statute was enacted by voter initiative. Voter initiatives were authorized by an act of the Council of the District of Columbia which amended the char-

ter in the District of Columbia Self-Government and Governmental Reorganization Act. D.C.Code §§ 1–201 to –295 (1981 & 1986 Supp.) ("Home Rule Act"). At that time amendments to the charter would take effect only if both Houses of Congress passed a concurrent resolution. *Id.* § 1–205(b). Therefore, appellant argues, because the charter amendment authorizing voter initiatives did not provide for presentment to the President for signature as required by U.S. CONST. art. I, § 7, cl. 3, the mandatory minimum sentence statute is invalid and the trial court was without authority to impose the mandatory minimum sentence on appellant. We agree that the congressional oversight provisions of D.C. Code § 1–205(b) are unconstitutional, but hold them to be severable from the charter amendment authority in the Home Rule Act. *Gary v. United States,* 499 A.2d 815 (1985) (en banc) (Nebeker, and Terry, JJ., concurring; Belson, J., concurring; Mack, J., concurring in part and dissenting in part); D.C.Code § 1–205(a). Accordingly, we affirm.

**I**

The validity of the mandatory minimum sentencing provisions for drug dealers, D.C.Code § 33–541(a)(1) (1986 Supp.), rests on three successive sources of legal authority. First, the measure was enacted by citizen initiative on September 14, 1982, and became effective on June 7, 1983. *See* 30 D.C.Reg. 1226–27 (1983). The D.C. Self-Government and Governmental Reorganization Act, D.C.Code § 1–201 *et seq.* (1981 and 1986 Supp.), however, originally did not contain a provision for citizen initiative, referendum, and recall.[1] This citizen authority was instead granted by the Council of the District of Columbia through a charter amendment that became effective on March 10, 1978.[2] Finally, the authority of the D.C. Council to promulgate such a charter amendment was derived from D.C.Code § 1–205 (1981).[3]

Section 1–205(b) of the charter amendment provisions contains the oversight provisions that are challenged in this appeal.[4] Specifically, it requires that both houses of

1. The Home Rule Act was passed in 1973. *See* D.C. Self-Government and Governmental Reorganization Act, Act of December 24, 1973, Pub.L. No. 93–198, 87 Stat. 774. For a discussion of the history of the government of the District of Columbia, *see Gary, supra,* 499 A.2d at 817–18; Home Rule for the District of Columbia 1973–1974, Background and Legislative History of H.R. 9056, H.R. 9682 and Related Bills Culminating in the District of Columbia Self-Government and Governmental Reorganization Act (Comm.Print 1974) (House Committee on the District of Columbia 1974) [hereinafter cited as "Legislative History"]; Newman and Depuy, *Bringing Democracy to the Nation's Last Colony: The District of Columbia Self-Government Act,* 24 Am.U.L.Rev. 537, 542 (1975).

2. Section 1–282(a) of the Home Rule Act provides in pertinent part:
 An initiative or referendum may be proposed by the presentation of a petition to the District of Columbia Board of Elections and Ethics containing the signatures of registered qualified electors equal in number to 5 percent of the registered electors in the District of Columbia: Provided, that the total signatures submitted include 5 percent of the registered electors in each of 5 or more of the City's wards.

Section 1–285 provides:
 If a majority of the registered qualified electors voting in a referendum approve an act or adopt legislation by initiative, then the adopted initiative or the act approved by referendum shall be an Act of the Council upon the certification of the vote on such initiative or act by the District of Columbia Board of Elections and Ethics, and such act shall become law subject to the provisions of § 1–233(c).

3. Section 1–205(a) provides in pertinent part:
 The charter set forth in title IV (including any provision of law amended by such title), except §§ 1–221(a) and 1–241(a), and part C of such title, may be amended by an act passed by the Council and ratified by a majority of the registered qualified electors of the District voting in the referendum held for such ratification.

4. Section 1–205(b) provides in pertinent part:
 An amendment to the charter ratified by the registered qualified electors shall take effect only if within 35 calendar days ... of the date such amendment was submitted to the Congress both Houses of Congress adopt a concurrent resolution ... approving such amendment.

Congress must approve a ratified amendment by concurrent resolution within 35 days. The initiative amendments were approved in this fashion. The section does not, however, provide for the presentment of the amendment to the President, and no such presentment of the initiative amendments occurred.

Appellant McClough was convicted for possession of illegal narcotics with intent to distribute and was sentenced in accordance with the mandatory minimum sentencing provisions. In reliance on *Chadha, supra,* he argued to the trial judge, and argues here, that the presentment requirement applies to D.C. charter amendments, that § 1–205 is invalid because it does not provide for presentment, that the D.C. Council and the electorate were powerless to install initiative procedures, and that any measure passed by initiative, including the mandatory minimum sentencing provisions, therefore lacked legal authority. The trial judge held that *Chadha's* requirement of bicamerality and presentment for legislative matters did not apply to the District of Columbia, and therefore the charter amendment procedures were valid in their entirety.

## II

■■■ This court has recently and specifically held that *Chadha* applies to provisions under the D.C. Home Rule Act. In *Gary v. United States, supra,* 499 A.2d at 819, the court, sitting en banc, wrote that "the powers involved in the Home Rule Act veto provisions are legislative in character, effect and fact." Congress' plenary power over the District of Columbia means no more than that it is akin to a state legislature, and not that the government thereof is not legislative in character. Without a special exception, the presentment required applies whenever a broad power is concerned. *Chadha, supra,* 462 U.S. at 948–55, 103 S.Ct. at 2782–86. On this appeal, the government and amicus have not challenged the applicability of *Chadha.* Nor have they disputed the contention that *Chadha* invalidates the procedure contained in § 1–205(b) for congressional approval of charter amendments without presentment to the President. We agree that our recent decision in *Gary* forecloses any extended inquiry.

In *Gary, supra,* 499 A.2d at 817, three defendants challenged their convictions under District of Columbia Code provisions that they claimed had been repealed by the District of Columbia Sexual Reform Act of 1981, D.C. Act No. 4–69, 28 D.C.Reg. 3409 (1981). This Act had been subjected to a (one house) veto by the House of Representatives pursuant to the legislative veto provisions of D.C.Code § 1–233(c)(2) (1981), which applies generally to legislative acts of the D.C. Council.[5] There is no germane difference between the legislative character of charter amendments as opposed to Council acts. Moreover, the bicameral requirement of § 1–205(b), as opposed to the unicameral sufficiency of § 1–233(c)(2) (limitations on authority of the D.C. Council), does not cure the lack of presentment. *See Chadha, supra,* 462 U.S. at 947–48, 103 S.Ct. at 2782. *Consumers Energy Council of America v. FERC,* 218 U.S. App.D.C. 34, 673 F.2d 425 (1982), *summarily aff'd sub nom. Process Gas Consumers Group v. Consumer Energy Council of America,* 463 U.S. 1216, 103 S.Ct. 3556, 77 L.Ed.2d 1402–1403 (1983).

## III

The sole issue before the court, then, is the severability of the § 1–205(b) congressional veto provisions from the general charter amendment powers conferred upon

---

5. Section 1–233(c)(2) provides in pertinent part: In the case of any such act transmitted by the Chairman with respect to any act codified in Title 22, 23, or 24, such act shall take effect at the end of the 30–day period beginning on the day such act is transmitted by the Chairman to the Speaker of the House of Representatives and the President of the Senate *only if during such 30–day period 1 House of Congress does not adopt a resolution disapproving such act.* [Emphasis supplied.]

the D.C. Council and the electorate by § 1–205(a). If severable, the D.C. Council would have had the power to pass, and the electorate to ratify, the initiative charter amendment without being subject to any oversight provisions. McClough does not address the severability issue in his brief. The government and amicus District of Columbia contend that Congress would nonetheless have passed § 1–205(a) had it known that § 1–205(b) was unconstitutional.

 This court also exhaustively addressed the severability issue in the *Gary* case. Generally, courts sever invalid provisions unless it is "evident" that, but for those provisions, the legislature would not have enacted the remaining provisions. *Id.* at 821; *Chadha, supra,* 462 U.S. at 931–32, 103 S.Ct. at 2773–74; *Buckley v. Valeo,* 424 U.S. 1, 108–09, 96 S.Ct. 612, 677–78, 46 L.Ed.2d 659 (1976). This type of inquiry is elusive because Congress might well have considered many other alternatives, and because the court must determine how many provisions are part of "the law." Nonetheless, there is a presumption of severability whenever the remaining provisions, standing alone, are "fully operative as a law." *Champlin Refining Co. v. Corporation Commission,* 286 U.S. 210, 234, 52 S.Ct. 559, 565, 76 L.Ed. 1062 (1932). The "cardinal principle of statutory construction is to save and not to destroy." *Tilton v. Richardson,* 403 U.S. 672, 684, 91 S.Ct. 2091, 2098, 29 L.Ed.2d 790 (1971) (plurality opinion) (quoting *NLRB v. Jones & Laughlin Steel,* 301 U.S. 1, 30, 57 S.Ct. 615, 620–21, 81 L.Ed. 893 (1937)). This presumption applies even when, as in the instant case, there is no severability clause. *Regan v. Time,* 468 U.S. 641, 652–54, 104 S.Ct. 3262, 3269–70, 82 L.Ed.2d 487 (1984).

The issue here is whether Congress would have granted the D.C. Council and electorate the power to amend the charter absent the two house concurrent resolution requirement. In *Gary, supra,* 499 A.2d at 821, the court viewed the issue as whether the § 1–233(c)(2) one house veto was integral to the entire Home Rule Act. The situations are different, however, because the essence of a home rule authorization is to vest local authorities with substantial legislative powers. This type of grant can be made with or without the ability to amend the charter. The court in *Gary* rejected the argument that the authority to enact criminal laws should be regarded as a separate law on the ground that the Home Rule Act made a general authorization to enact legislation. *Id* at 821 n. 13. By contrast, the authority to amend the charter is substantively different, a less prominent feature, procedurally distinct, and found in separate sections.[6] Both the government and *amicus* District of Columbia view the issue as limited to the continued viability of § 1–205 alone. Thus, we do not saddle McClough with the burden of having the status of the entire Home Rule Act ride on this determination.

The holding in *Gary* also does not itself entirely dispose of this case because of the differences between charter amendments and routine legislative enactments. Congress could well have intended primarily to vest the D.C. Council with general legislative powers while also desiring to retain basic control over structural matters contained in the charter. Thus, the argument would run, Congress might not have been willing to grant any charter amendment powers at all if it could not retain direct and ready control through the concurrent resolution approval requirement. Indeed, differences in the procedures themselves might suggest that Congress was more concerned about retaining control over the contents of the charter. Prior to *Gary,* an act of the Council became law *unless* one house acted to adopt a *veto* resolution. On the other hand, a Charter amendment, by

---

6. In *Chadha, supra,* 462 U.S. at 931–35, 103 S.Ct. at 2773–75, the Supreme Court assessed the severability of one unconstitutional subsection from a section, and in *Buckley, supra,* 424 U.S. at 108–09, 96 S.Ct. at 677, the Court assessed the severability of three invalid subsections from a subtitle.

the terms of the statute, can take effect *only if both houses* adopt a concurrent *approving* resolution. Thus, except for the limitations in § 1–233 (unicameral sufficiency), the District of Columbia government enjoyed far more independance for legislative acts than for charter amendments.

■ The analysis and findings in *Gary* nonetheless lead us to the conclusion that the two house approval requirement is severable from § 1–205. First, § 1–205 is fully operable as law without the approval provisions. Second, this operation is consistent with the general statutory scheme because the purpose of the Home Rule Act in general was to provide autonomy and local democracy to the District of Columbia. Section 1–201 states that Congress desired to:

> grant to the inhabitants of the District of Columbia powers of local self-government; modernize, reorganize, and otherwise improve the governmental structure of the District of Columbia; and, to the greatest extent possible, consistent with the constitutional mandate, relieve Congress of the burden of legislating upon essentially local District matters.

*See also McIntosh v. Washington*, 395 A.2d 744, 753 (D.C.1978).

Of course, Congress was also concerned with retaining some measure of control through the legislative veto. This concern, however, must be interpreted against the dominant purpose of increased local autonomy,[7] the importance placed on the amendment procedures, *see* Legislative History, *supra* note 1, at 121–22, 242–43, 625, and the procedural nature of the veto. This court en banc has adopted the view that oversight provisions are merely procedural appendages that should be severed whenever the frustrated policy is simply that of congressional control. *Gary, supra,* 499

A.2d at 823 (citing Note, *Severability of Legislative Veto Provisions, A Policy Analysis,* 97 HARV.L.REV. 1182, 1196 (1984)). Given the primacy of stated substantive goals such as political autonomy, this court is justified in relying on Congress to repeal § 1–205 at a later date if it wishes to retain control in addition to its power over the District of Columbia pursuant to U.S. CONST. art. I, § 8, cl. 17.

Congress also continues to enjoy abundant power over the District of Columbia. In *Gary, supra,* 499 A.2d at 830, the court found that "the myriad of other controls, such as the plenary authority of Congress under Art. I of the Constitution, control over the budget, other limitations on the authority of the Council and local government, [and] the limitation with respect to modification of Titles 22, 23, and 24 [of the D.C.Code] ... were viewed by Congress as the central mechanisms insuring appropriate federal oversight." When Congress was concerned with the nature of its control over a particular area, it removed that area from the charter amendment procedures altogether. For example, the District of Columbia government cannot amend the basic structure of the Council (D.C.Code § 1–221(a)), the office of the Mayor (*id.* § 1–241(a)), or the judiciary (*id.*) § 1–233(a)(4), and has no power over certain congressional reservations of authority (*id.* § 1–206), over appropriations (*id.* § 47–313), and over certain limitations on its own authority (*id.* § 1–233).

The legislative history also demonstrates that oversight provisions were not a major concern of the legislators. *Gary, supra,* 499 A.2d at 829. When mentioned, the oversight of charter amendments was simply listed, if at all, as one of many measures that would protect federal interests. *See* Legislative History, *supra* note 1, at 1443, 1448, 3031, 3052, 3114, and 3117. Originally, the House had provided for a

---

**7.** For example, in discussing the one house veto over Council enactments, Senator Eagleton, Chairman of the Senate Committee on the District of Columbia, stressed that the dominant purposes of the home rule bill were to reduce congressional burdens and to restore self-government to the District. Legislative History, *supra* note 1, at 2754–757. *See also id.* at 2758 (remarks of Senator Mathias).

one house veto over charter amendments, *id.* at 2466, and the Senate had not provided for charter amendments. *Id.* at 2630–31. At the Senate-House conference, it became apparent that the Senate's major concern was to prevent a change in the structure of the government. *Id.* at 2914. The principal component of the conference compromise was to exclude the form of the government from the charter amendment powers. *Id.* at 2932, 2933, 3009. Our review of the legislative history reveals little discussion of, and no particular emphasis on, the two house approval requirement, and it was certainly not "evident" that the approval requirement of charter amendments was so important to a majority of legislators[8] that the amendment powers would not otherwise have been granted. *See Gary, supra,* 499 A.2d at 825–27.

This conclusion is buttressed by one additional consideration. In 1984, Congress amended § 1–205 of the Home Rule Act to provide that charter amendments would take effect absent a concurrent *disapproval* resolution signed by the President, and that all provisions of the Home Rule Act should be considered severable. Pub.L. No. 98–473, § 131(b), § 762, 98 Stat. 1837, 1975 (October 12, 1984). This action furnishes some evidence[9] as to the intent of the Congress that passed the original charter amendment procedures, *see Gary, supra,* 499 A.2d at 828–29 (one house veto over enactments), and can be taken into account in assessing general congressional attitudes on the prominence of procedural controls to this type of substantive enactment.[10] The 1984 amendments thus directly affirm our conclusion that Congress was primarily concerned with providing effective home rule and that severing the unconstitutional charter amendment oversight provisions from § 1–205 is consistent with congressional intent. The mandatory minimum sentencing provisions therefore have been enacted with the proper authority.

Accordingly, the judgment is affirmed.

MACK, Associate Judge, concurring in the result only:

Although I am bound by *M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971), to observe prior decisions rendered by this court, I believe the arguments I advanced in my separate opinion in *Gary v. United States,* 499 A.2d

---

**8.** The Chairman of the House Committee on the District of Columbia implied in two post conference Dear Colleague letters, which set forth twelve objectives accomplished by the Conference report, that oversight provisions were essential to his vote, but his remarks did not emphasize Charter amendment approval and were largely confined to the one house veto over Council enactments relating to criminal laws. *See* Legislative History, *supra* note 1, at 3041–42, 3050. Moreover, several members of the House Committee questioned the constitutionality of oversight provisions that did not include a presentment requirement. The court in *Gary* adopted the view that "it is hard to imagine that a majority of either the Senate or the House viewed a 'dubiously constitutional provision as the *sine qua non* of the Act.'" *Id.* at 830 (citations omitted).

**9.** Such evidence should be considered, but "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1960).

**10.** Arguably, the 1984 amendments also provide this court with the supervening law to be applied in the instant case. *See Gary, supra,* 499

A.2d at 836–37 (Nebeker, J., concurring), and at 859 (Terry, J., concurring). On the other hand, there is, as amicus District of Columbia points out, a real issue as to whether a subsequent act of Congress can retroactively validate the action of a distinct political body that lacked the proper authority at the time of that action. Given our holding that the charter amendment oversight provisions were not integral to the votes of the 93rd Congress, we need not reach the issue whether the 1984 amendments provide the controlling law in this case.

Similarly, § 131(k) of the 1984 amendments provided that the 1984 amendments shall not be applicable with respect to any law passed by the Council prior to the date of enactment of these amendments, and such laws are hereby deemed valid in accordance with the provisions thereof, notwithstanding such amendments. *See* D.C. Code § 1–205(b) and annotation (1986 Supp.). We need not decide, in view of our previous conclusions in *Gary* and the instant case, whether this type of savings clause would make an effective retroactive grant of authority, and would be applicable to charter amendments, which require voter approval to be effective.

815, 849 (D.C.1985) (en banc) (Mack, J., dissenting in part and concurring in part), supporting the constitutionality of the one house of Congress veto of legislative enactments of the Council of the District of Columbia, D.C.Code § 1–233(c)(2) (1981) apply with equal force to support the constitutionality of the concurrent resolution mechanism of the charter amendment provision at issue here, D.C.Code § 1–205(b) (1981). I therefore concur in the result only.