COMMERCE UNION BANK OF CHATTANOOGA et al., Plaintiffs-Appellees,

v.

STATE BOARD OF EQUALIZATION, Defendant-Appellant.

Supreme Court of Tennessee.

May 4, 1981.

Robert J. Warner, Jr., Mary V. Anderson, Nashville, for plaintiffs-appellees.

Charles L. Lewis, Asst. Atty. Gen., Nashville, for defendant-appellant.

## OPINION

HARBISON, Chief Justice.

Involved in this case is the interpretation of an excise tax on bank earnings enacted in 1977 and codified in T.C.A. §§ 67–751 to –763. The principal issue between the parties is the interpretation and application of a credit for new banks provided in T.C.A. § 67–753.

■ Although the tax has been referred to in the record as an intangible property tax and although ad valorem property tax concepts have been stressed by the parties, it is important to note at the outset that this tax is not a property tax. It is an excise tax on corporate earnings and is clearly so designated. Certain credits against the tax and an alternate minimum tax utilize ad valorem concepts. Nevertheless the statute is clear in stating that in lieu of assessment of intangible personal property,

> "... each bank doing business in this state shall pay to local governments of Tennessee an *excise tax* of three percent (3%) *of the net earnings for the next preceding fiscal year ....*" T.C.A. § 67–751 (emphasis added).

The statute further provides:

"The net earnings shall be calculated in the same manner as prescribed by chapter 27 of title 67." *Ibid.*

This reference is to the general corporate excise tax. It is true that the tax is in lieu of an ad valorem tax, its administration is assigned to the Division of Property Assessments of the state, and the tax is payable to county and municipal governments. T.C.A. § 67–756. Nevertheless it is a corporate excise tax and must be so regarded and administered. Rules and regulations regarding the calculation and administration of the regular corporate excise tax are pertinent, because the tax is to be calculated in the same manner as that tax.

The dispute between the parties concerns the credit for new banking institutions provided in T.C.A. § 67–753 as follows:

"The tax of any bank which has been in business less than five (5) years shall be reduced proportionately at the rate of one fifth (⅕) for each year less than five (5) it has been in business."

Five new banks, each of them subsidiaries of a holding company, Tennessee Valley Bancorp, contest their assessment for 1977, the year in which the new tax was enacted and the first year in which it was assessed. Apparently each of the banks operates on a calendar year and closes its books on December 31 of each year. The "fiscal year" of each bank, thereafter, coincides with the calendar year. Four of the banks were formed and started business in 1974; one of them began business in 1973.

The bank excise tax was enacted during the legislative session in the early part of 1977 to become effective on July 1, 1977. As enacted, the statute required a taxpayer to file a return by the first of April of each year. The Division of Property Assessments was to compute the tax and certify to local governments the amount allocated to each not later than July 1. A subsequent amendment to the statute advanced the return date to September 1 and final computation of the tax to November 1. T.C.A. § 67–756.

Apparently the Division of Property Assessments deemed the tax to have been in effect from the beginning of 1977. It required returns to be filed and computed taxes for the five banks during the fall of 1977. Apparently, therefore, the Division used earnings for the calendar year 1976 as the excise tax base, although this is at no point made clear in the record by any of the parties. The Court of Appeals assumed that 1976 earnings had been used as a basis for the tax computation, and this is also our assumption. If in fact this is incorrect and the Division of Property Tax Assessments undertook to project 1977 earnings as the excise tax base, then, in our opinion, the result would be altered.

The extreme difficulty with which this case has been clouded from its inception is the insistence by the parties that the tax is an intangible property tax and that ad valorem property assessments and practices

must be utilized. Of course real and tangible personal property are assessed as of January 1 of each year. T.C.A. § 67–603. This assessment, however, is not for the previous year, but for the ensuing or coming year.

The bank tax now under consideration is not such an ad valorem tax at all, but is an excise tax on corporate earnings *"for the next preceding year."* T.C.A. § 67–751. It is therefore necessarily based upon a closed fiscal, or accounting, period.

Since the statute in question directs that the tax be based upon net earnings calculated in the same manner as prescribed by Chapter 27 of Title 67, it is necessary to look to that chapter and to the regulations promulgated thereunder for the proper method of calculating the tax here involved.

The general corporate excise tax is levied upon net earnings "defined as federal taxable income" subject to certain deductions and exemptions. T.C.A. § 67–2704. An annual return is required to be filed with the Commissioner of Revenue on or before the first day of the fourth month following the close of a corporation's taxable year. T.C.A. § 68–2728.

Regulations promulgated by the Franchise and Excise Tax Division of the Department of Revenue provide for a "short period" return as follows:

> "In the event of a corporate closing occurring within less than twelve (12) months of incorporation, domestication or commencing of business, the franchise tax of a domestic corporation will be prorated to cover the proportionate part of the year since the date of incorporation or the date of commencing business, whichever occurs first. The franchise tax of a foreign corporation will be prorated to cover the proportionate part of the year since beginning business in Tennessee. *The excise tax may not be prorated."* Chapter 1320–6–1–.05(1) (emphasis added).

Other pertinent regulations provide as follows:

> "The franchise and excise taxes are accrued taxes and pay for a privilege

period coextensive with the taxpayer's fiscal year closing or part thereof." Chapter 1320–6–1–.09.

> "Once the taxpayer has elected a particular date as the close of its fiscal year, such closing may not be changed without prior approval of the Commissioner. *A return will be required based on every fiscal closing of the corporate records.* The excise tax will not be subject to proration. The franchise tax will be prorated to cover the proportionate part of the year covered by the return." Chapter 1320–6–1–.10 (emphasis added).

It is thus apparent that the regular corporate excise tax is computed on a fiscal year basis, and that a short period return is required for the first year, or part of year, in which the corporation is subject to the tax. Returns for partial accounting periods are widely used in both federal and state corporate taxation.

It is conceded in this case that each of the banks closed its books at the end of the fiscal (calendar) year in which it began doing business and annually thereafter on December 31. The closings upon which the tax now in question was calculated occurred December 31, 1976, according to our understanding.

■ Since the bank excise tax is to be calculated in the same manner as the general corporate excise tax and is really nothing more than an additional excise tax payable to local governments, we are of the opinion that the first year of business for purpose of the new bank credit is that year, or part of year, in which the new bank begins doing business and at the end of which it has its first closing. In the case of four of the taxpayers, this would have been December 31, 1974, and in the case of the other, December 31, 1973.

■ It was upon this basis that the courts below computed the new bank credit in each of these cases. We are persuaded that this was the correct calculation. For those taxpayers beginning business in 1974 and closing their books on December 31 of

**154**

that year, a complete credit would have been provided by T.C.A. § 67–753. A tax computed upon 1975 earnings would have been subject to eighty percent credit, and the tax based upon 1976 earnings would have been entitled to sixty percent credit. Although they stated their reasons somewhat differently, this was the result reached by the courts below. Similarly, for a taxpayer beginning business in 1973, credit of forty percent should have been allowed for a tax based upon 1976 earnings.

In each of the present cases, the alternate minimum tax provided in T.C.A. § 67–752 has been referred to. The provisions of that section, like the general corporate excise tax, also involve the first closing of books and records. The statute, in part, provides as follows:

> "In no event shall the tax imposed under § 67–751 upon any bank be less than an ad valorem tax calculated on the basis of sixty percent (60%) of the book value of the bank as of December 31, 1976, except that the sixty percent (60%) book value of any bank which has been in business for five (5) years or less shall be determined as of the first year such bank is in business and the sixty percent (60%) book value of the fifth year shall be used for the sixth and all years thereafter. The book value of any bank shall be the sum of the paid in capital, surplus and undivided profits." T.C.A. § 67–752.

The statute prescribes a formula for an assessment under this method. It is conceded that all of the banks in question had a closing as of December 31 of the year in which business began and that a book value was determinable at that time and annually thereafter.[1]

The judgments of the courts below are affirmed at the cost of appellant. The cause will be remanded to the trial court for

enforcement of the judgment and for any other orders which may be necessary.

FONES, COOPER, BROCK and DROWOTA, JJ., concur.

---

1. Of course no tax is ever actually due for the year, or part of year, in which a bank begins business because of the overriding credit provided in T.C.A. § 67–753. In all subsequent years it will have had its real and tangible personal property appraised for ad valorem tax purposes. These appraisals are credited against the book value established pursuant to T.C.A. § 67–752.