**FIRST OF McALESTER
CORPORATION,**
Appellant,

v.

**OKLAHOMA TAX
COMMISSION, Appellee.**

**FIRST STATE BANK & TRUST
COMPANY OF SHAWNEE,**
Appellant,

v.

**OKLAHOMA TAX
COMMISSION, Appellee.**

Nos. 60488, 60653.

Supreme Court of Oklahoma.

July 2, 1985.

J.A. Allford, McAlester, for appellant First of McAlester Corp.

Terry W. West, Shawnee, for appellant First State Bank & Trust Co. of Shawnee.

J. Lawrence Blankenship, Gen. Counsel and Donna E. Cox, Oklahoma Tax Com'n, Oklahoma City, for appellee Oklahoma Tax Com'n.

Laura N. Pringle, Vice President and Gen. Counsel, Oklahoma City, for amicus curiae Oklahoma Bankers Association.

Conner, Winters, Ballaine, Barry & McGowen by J. Denny Moffett and Douglas M. Rather, Tulsa, for amicus curiae First Tulsa Bancorporation, Inc.

Hastie and Kirschner by James E. Britton, Oklahoma City, for amici curiae First

National Bank, Mangum, First Mangum Corp. First National Bank, Mountain View, Guaranty Bancshares, Inc.

Bryce A. Baggett, Oklahoma City, for amici curiae Central National Bank of Oklahoma City and Friendly National Bank of Southwest Oklahoma City.

HODGES, Justice.

On June 21, 1983, and June 29, 1983, First of McAlester Corporation and First State Bank & Trust Company of Shawnee, Oklahoma (appellants), respectively, filed separate petitions in error. Simultaneous therewith approximately 268 appeals were filed with this Court. On September 19, 1983, this Court consolidated the foregoing named actions and stayed all other appellate proceedings of similarly situated banks pending resolution of such consolidated appeal. Further, this Court authorized the Oklahoma Bankers Association and any bank whose appeal is stayed to file amicus curiae briefs.[1]

Appellants in the instant consolidated action seek review of the Oklahoma Tax Commission Order No. 83–05–10–15 rendered May 10, 1983, denying appellants' and all other banks' claims for refund and denying all exclusions from net income for calculations of bank tax liability accrued prior to the decision of the United States Supreme Court in the case of *Memphis Bank & Trust Co. v. Garner*, 459 U.S. 392, 103 S.Ct. 692, 74 L.Ed.2d 562 (1983) and determining that *Memphis Bank* should be applied prospectively only.

Shortly after the *Memphis Bank* decision, appellants sought a refund of "in lieu tax" paid to the State of Oklahoma through the Oklahoma Tax Commission (Commission or appellee) pursuant to the requirements of 68 O.S. 1981 §§ 2370 and 2371, for the years of 1979, 1980 and 1981, respectively. Appellant First State Bank &

---

**1.** Those filing amicus curiae briefs include The Oklahoma Bankers Association, adopted by appellants as their Brief in Chief and Reply Brief; First Tulsa Bancorporation, Inc.; The First National Bank, Mangum, Oklahoma, First Mangum Corp., First National Bank, Mountain View, Oklahoma, and Guaranty Bancshares, Inc.; Central National Bank of Oklahoma City and Friendly National Bank of Southwest Oklahoma City.

Trust Company of Shawnee has filed and appellant First of McAlester Corporation asserts that it will file 1982 returns with the Commission excluding interest on federal securities from net income in reliance upon the United States Supreme Court's pronouncement in *Memphis Bank*. Appellants specifically request that Order No. 83–05–10–15 be vacated and the cause be remanded to the Commission with instructions to enter its Order granting appellants' claims for refund for the years 1979 through 1981, and allowing appellants' exclusions from net income for calculations of bank tax liability accrued prior to the *Memphis Bank* case. In addition, appellants seek declaratory relief from this Court, finding 68 O.S. 1981 §§ 2370 and 2371 [2]

invalid from the date those provisions of law became effective in the State of Oklahoma on June 22, 1971, and directing the Commission to honor claims for refunds for any amounts paid pursuant to those provisions since that date. Appellee requests that this Court uphold and affirm its Order and give prospective application to avoid inequity or hardship.

On January 24, 1983, the United States Supreme Court decided *Memphis Bank*, wherein the Court reviewed a Tennessee statute that imposed a tax on a bank's net earnings, and defined net earnings to include income from obligations of the United States and its instrumentalities but excluded interest earned on the obligations of Tennessee and its political subdivisions.[3]

---

**2.** The "in lieu tax for national banks" and an "in lieu tax for state banks and credit unions" provisions pertinent to appellants' claims were found in 68 O.S. 1981 §§ 2370 and 2371, respectively, and the "in· lieu taxes" on a bank's entire *net income* were calculated identically in each section as follows:

"[t]ax ... measured by its [the bank's or credit union's] *entire net income* for its taxable year at the rate of four percent (4%) of the amount of the net income as herein provided.

*       *       *       *       *       *

C. ... the basis of the tax shall be the *taxable income* as defined herein and any *additions* thereto under the provisions of Section 8, A, 1,[4] hereof except interest income on obligations of the State of Oklahoma or political subdivisions thereof and any allocations of *net income* permitted under Section 8." (emphasis added).

The Section 8 referenced in the above provision is found at 68 O.S. 1981 § 2358 and does not expressly exclude interest income on federal obligations as is specifically excepted in the above provision for interest income on obligations of the State of Oklahoma and its political subdivisions.

Section 2370 was amended with an emergency provision on June 6, 1983, by 1983 Okla.Sess. Laws, Ch. 167, to read in relevant part:

"D. The basis of the tax shall be United States taxable income as defined in Section 2353(10) and any adjustments thereto under the provisions of Section 2358 of this title with the following adjustments:
1. There shall be deducted all interest income on obligations of the United States Government and agencies thereof not otherwise exempted ˙and all interest income on obligations of the State of Oklahoma or political subdivisions thereof not otherwise exempted under the laws of this State."

The foregoing provision was further amended by Senate Bill No. 250 effective June 24, 1983; however, the latter amendment did not affect the substance of the provision and merely changed style and punctuation. Further, § 2371 was repealed by 1983 Okla.Sess.Laws, Ch. 167, effective July 1, 1983.

**3.** Tenn.Code Ann. § 67–751 (Supp.1982) (repealed 1983) provided:

"Excise tax on bank earnings—Rate.—
There is hereby created a subclassification of intangible personal property which shall be designated as the 'shares of banks and banking associations.' All property in this subclassification shall be taxed in the following manner: Commencing in 1977 and each year thereafter, in lieu of the assessment according to the value and taxation of its intangible personal property, each bank doing business in this state shall pay to local governments of Tennessee an excise tax of three percent (3%) of the *net earnings* for the next preceding fiscal year less ten percent (10%) of the ad valorem taxes paid by the bank on its real property and tangible personal property for the next preceding year. The net earnings shall be calculated in the same manner as prescribed by chapter 27 of title 67. The tax herein imposed shall be in lieu of all taxes on the redeemable or cash value of all of their outstanding shares of capital stock, customer savings and checking accounts, certificates of deposit and certificates of investment, by whatever name called, including other intangible corporate property of such bank or banking association provided that such bank or banking association shall nonetheless continue to be subject to ad valorem taxes on its real and tangible personal property, the excise tax imposed under chapter 27 of title 67 and all other taxes to which it is currently subject." (emphasis added)

Each bank was required under the statute to pay to the local governments of Tennessee an excise tax of 3% of its net earnings for the preceding year, less 10% of the ad valorem taxes paid by the bank for that year. The Memphis Bank & Trust Company paid the required excise tax under protest and subsequently filed an action in state court to recover the portion of taxes paid covering interest income on federal obligations. The United States Supreme Court, in reversing the judgment of the Tennessee Supreme Court, unanimously held that the Tennessee bank tax violated the immunity of obligations of the United States from state and local taxation and found that the tax could not be characterized as nondiscriminatory under the exception for nondiscriminatory franchise taxes as provided for in 31 U.S.C. § 742.[4] 459 U.S. at 398. *See also Federal Tax Immunity; Memphis Bank & Trust Co. v. Garner; Washington v. United States,* 37 Tax Law 375 (1984).

On June 6, 1983, the Governor of Oklahoma signed into law Enrolled House Bill 1380,[5] which amended the provisions of 68 O.S. 1981 § 2370 by deleting the final paragraph of subsection C and adding a new subsection D and repealing 68 O.S. 1981 § 2371. Although the legislative history is silent as to the intent of the Legislative, it is apparent that its intent was to cure any constitutional infirmities that might be found in the in lieu bank tax provisions.

The dispositive issues presented in this consolidated appeal are as follows: (1) Whether the now repealed Oklahoma taxing scheme, which included income from federal securities, was unconstitutional; (2) If answered in the affirmative, should the invalid tax levy condemned by the *Memphis Bank* case, be nullified prospectively or retroactively to 1971, the date of enactment of 68 O.S. 1981 §§ 2370 and 2371?

## I.

Turning now to appellants' constitutional claim, that the Commission's Order is contrary to the holding and intent of the *Memphis Bank* case in that it mandates recognition by the Commission that the in lieu tax "impermissibly discriminated against

---

The term "net earnings" was defined in Tenn. Code Ann. § 67–2704 (Supp.1982) as "federal taxable income" with certain specified adjustments. Tenn.Code Ann. § 67–2704(b)(1)(B) adjusted federal taxable income by adding "[i]nterest obligations of other states or their political subdivisions, less allowable amortization." "'Federal taxable income' includes interest on obligations of the United States and its instrumentalities, but does not include interest on state or municipal obligations. See 26 U.S.C. § 103(a)." *Memphis Bank,* 459 U.S. at 394 n. 3, 103 S.Ct. at 694 n. 3. Consequently, the definition of net earnings subject to the Tennessee bank tax included income from obligations of the United States and states other than Tennessee, but did not include income of obligations of Tennessee.

**4.** 31 U.S.C. § 742 (current version at 31 U.S.C. § 3124(a) provided:

"Except as otherwise provided by law, all stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority. This exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax, *except nondis-*

criminatory franchise or other non-property taxes in lieu thereof imposed on corporations and except estate taxes or inheritance taxes." (emphasis added).

The exemption of federal obligations from state and local taxation was originally enacted by Congress in the Act of July 14, 1870, Ch. 256, 16 Stat. 272 (1870) and later compiled in the Revised Statutes of 1878, Title 42, § 3701, 18 Stat. 731 (1878). Revised Stat. § 3701 was amended in 1959 by section 105(a) of the Act of Sept. 22, 1959, Publ.L. No. 86–346, 73 Stat. 622 (1959). Revised Stat. § 3701, 31 U.S.C. § 742, subsequently has been reformulated in 31 U.S.C. § 3124(a) (1982). Because the taxes in question were paid from 1971 to 1982, former Rev.Stat. § 3701, rather than the present 31 U.S.C. § 3124(a), controls this litigation.

**5.** 1983 Okla.Sess.Laws, Ch. 167. See *supra* note 2. We need not decide whether the current statute is violative of 31 U.S.C. § 3124(a) as this is not an issue present in this appeal. Amicus Curiae Central National Bank of Oklahoma City and Friendly National Bank of Southwest Oklahoma City must accept the issues raised by the litigants and cannot make other constitutional questions not otherwise addressed. *Morland Development Co. v. City of Tulsa,* 596 P.2d 1255, 1258 (Okla.1979); *State v. Ford,* 434 P.2d 934 (Okla.1967).

the Federal Government and those with whom it deals" from the date §§ 2370 and 2371 became effective in Oklahoma on June 22, 1971.

■ The relevant provisions of the United States Constitution to the present case are article I, § 8, clause 2 (the "Borrowing Clause")[6] and article VI, clause 2 (the "Supremacy Clause").[7] In reliance upon *Memphis Bank*, appellants argue that the in lieu tax violates the federal constitutional immunity of United States obligations from state and local taxation. *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819) established the constitutional doctrine of tax immunity derived from the Borrowing and Supremacy Clauses that, "States may not impose taxes directly on the Federal Government, nor may they impose taxes the legal incidence of which falls on the Federal Government." *Memphis Bank*, 459 U.S. at 397, 103 S.Ct. at 696 (quoting *United States v. County of Fresno*, 429 U.S. 452, 97 S.Ct. 699, 50 L.Ed.2d 683 (1977)). "Where, as here, the economic but not the legal incidence of the tax falls on the Federal Government, such a tax generally does not violate the constitutional immunity if it does not discriminate against holders of federal property or those with whom the Federal Government deals." *Id.* A state is without authority to tax securities and obligations of the federal government, directly or indirectly; however, a nondiscriminatory franchise or other non-

property tax is not objectional as a tax on federal obligations despite the fact that the tax allows no deduction for sums invested in federal obligations.

The nondiscrimination test must therefore be applied in assessing the constitutionality of the Oklahoma bank tax. Accordingly, the pivotal question is whether the Oklahoma in lieu tax as provided in §§ 2370 and 2371 impermissibly *discriminates* against federal obligations in favor of obligations issued by Oklahoma and subdivisions thereof under 31 U.S.C. § 742.

The appellee urges this Court to adopt the construction of §§ 2370 and 2371 that such provisions on their face specifically exclude interest income earned on obligations of the United States from the measurement of the in lieu tax as well as the exclusion of interest income earned on obligations of Oklahoma and its political subdivisions, and is, thus, distinguishable from the Tennessee statute in *Memphis Bank*. In support of this contention, appellee argues that 68 O.S. 1981 §§ 2353 and 2358 are incorporated in their totality into the bank tax statutes. Specifically, appellee argues that the referenced "Section 8, A, 1" [68 O.S. 1981 § 2358(A)(1) ] and "Section 8" [68 O.S. 1981 § 2358][8] contained in §§ 2370 and 2371 refer to § 2358 in its entirety, thus including both subsections 1 and 2 of § 2358(A) in calculating the tax basis, rather than incorporating only subsection 1 which adjusts taxable income by

---

**6.** "The Congress shall have Power ... To borrow Money on the credit of the United States; ..." U.S. Const. art. I, § 8, cl. 2.

**7.** "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

**8.** 68 O.S. 1981 § 2358 (current version at 68 O.S.Supp.1983 § 2358) provided in pertinent part:
   "A. Taxable income and, where use of adjusted gross income is necessary, i.e., required by this act, adjusted gross income shall be adjusted as follows to arrive at Oklahoma

taxable income and Oklahoma adjusted gross income:
   1. There shall be added interest income on obligations of any state or political subdivision thereto which is not otherwise exempted under other laws of this state, to the extent that said interest is not included in taxable income and adjusted gross income.
   2. There shall be deducted amounts included in such income that the state is prohibited from taxing because of the provisions of the Federal Constitution, the State Constitution, federal laws or laws of Oklahoma."
Section 2358 was later amended by 1982 Okla. Sess.Laws, Ch. 293, § 2 and 1983 Okla.Sess. Laws, Ch. 275, § 10; however, such amendments do not substantially change the substance of the above quoted language.

adding interest income on obligations issued by states other than Oklahoma. Appellee argues that the term "taxable income"[9] found in §§ 2370 and 2371 should be defined by reference to other provisions of the Oklahoma Income Tax Act as the definition sections of the bank tax were deleted in 1971 and codified as part of the Income Tax Act found in article 23 of title 68 of the Oklahoma Statutes. Specifically, appellee urges reference to the definition of "taxable income" found in § 2353(10)[10] which adopts the definition of taxable income for federal income tax purposes. Appellee then looks to § 2358 which provides for adjustments, i.e., *additions, allocations* and *deductions,* to taxable income to arrive at "Oklahoma taxable income." The term net income used in §§ 2370 and 2371 is not defined; however, appellee suggests the application of the definition provided for "Oklahoma taxable income" found in § 2353(12).[11] Appellee concedes that it has not administered the bank tax to date to permit the deduction of interest income of federal obligations pursuant to § 2358(A)(2) and that the annual returns filed by bank taxpayers, prior to *Memphis Bank,* generally did not include such deduction even though they would claim annual net operating loss and depreciation deductions under other provisions of § 2358, if applicable. However, appellee asserts that its suggested construction of §§ 2370 and 2371 with reference to subsection A.2 of § 2358, in addition to subsection A.1 thereof, would require a deduction for interest income on federal obligation from the measurement of the bank tax and, thus, the bank tax would be administered in accordance with *Memphis Bank,* thereby withstanding the constitutional challenges of appellants.

■ By utilizing the strained construction as advocated by appellee in which § 2358(A)(2) is incorporated into the bank tax statutes, §§ 2370 and 2371 *might* perhaps be construed, as written, as nondiscriminatory. The facts are clear, however, that the Commission's administration of the bank tax act discriminated against federal obligations by computing the basis of the tax as federal taxable income (which includes interest income on federal obligations) plus the interest income on obligations of states other than Oklahoma. The more logical construction and the one we perceive to be that of the Legislature is that the §§ 2370 and 2371 tax basis is federal taxable income "and any additions thereto" under 2358(A)(1).[12]

In *American Bank & Trust Co. v. Dallas County,* 463 U.S. 855, 103 S.Ct. 3369, 77 L.Ed.2d 1072 (1983), the United States Supreme Court addressed state taxation of federal obligations in the context of a state bank shares tax. *American Bank* dealt with a direct property tax imposed on bank shares, the value of such shares measured by a computation including the value of

---

**9.** *See supra* note 2.

**10.** 68 O.S. 1981 § 2353(10) (current version at 68 O.S.Supp.1982 § 2353) provided:

> " 'Taxable income' with respect to any taxpayer means the 'taxable income,' 'life insurance company taxable income,' 'mutual insurance company taxable income,' '(regulated) investment company taxable income,' 'real estate investment trust taxable income,' and 'cooperatives' taxable income' and any other 'taxable income' *as defined in the Internal Revenue Code* as applies to such taxpayer or any income of such taxpayer ..." (emphasis added).

Under the Internal Revenue Code federal taxable income includes interest earned on the obligations of the United States and its instrumentalities, but excludes interest earned on the obligations of States and their political subdivisions. *See* I.R.C. § 103(a). The Oklahoma tax enlarges the scope of "federal taxable income" by including interest earned on the obligations of all states and their political subdivisions other than Oklahoma. 68 O.S.1981 § 2358(A)(1). *See supra* note 8.

**11.** 68 O.S.1981 § 2353(12) (current version at 68 O.S.Supp.1982 § 2353) provided:

> " 'Oklahoma taxable income' means 'taxable income' as reported (or as would have been reported by the taxpayer had a return been filed) to the federal government, and in the event of adjustments thereto by the federal government as finally ascertained under the Internal Revenue Code, *adjusted further as hereinafter provided;*" (emphasis added).

**12.** *See supra* note 8.

federal obligations held by the bank, rather than a type of excise income tax on banks measured by net income as presented in *Memphis Bank* and here. The Court held that a Texas property tax on bank shares, computed on the basis of the bank's net assets without any deduction for federal obligations held by the bank, violated the prohibitions of 31 U.S.C. § 742 which bars a tax regardless of its form if federal obligations are considered either directly or indirectly in computing the tax, if the tax does not fall within the express exceptions thereof. The *American Bank* decision cites with approval *Memphis Bank* for its broad construction of the exemption for federal obligations provided by § 742. In *American Bank*, respondents Dallas County, et al., argued that the federal statute did not prohibit the Texas tax because the tax statute, on its face, did not require the use of a formula based on the value of federal obligations in computing the value of bank shares for purposes of taxation. The Court rejected respondents' argument and concluded that it was irrelevant whether the inclusion of federal obligations in determining the value of bank shares was "mandated by the tax assessor in practice or by the state statute in so many words."

Amicus Curiae First Tulsa Bancorporation, Inc. aptly notes that if the Legislature had intended the basis of the bank tax to be federal taxable income as adjusted pursuant to all of the provisions of § 2358, it could have easily done so when it drafted §§ 2370 and 2371. Rather than using the term net income, it could have used the defined term "Oklahoma taxable income," and inserted language "taxable income as adjusted pursuant to § 2358" or "Oklahoma taxable income, less interest income on obligations of the State of Oklahoma and its political subdivisions." However, the Legislature chose the language "taxable income as defined herein and any additions thereto" under the provisions of § 2358(A)(1). The plain language of §§ 2370 and 2371 does not provide for any deductions or the incorporation of § 2358(A)(2).

A general rule of statutory construction is that an interpretation of a statute followed for a long period of time by the administrative agency charged with its administration is entitled to great weight where there is reasonable doubt as to the meaning of the statute. 2A Sutherland Stat. Const. § 4906 (4th ed. 1984). Our construction of §§ 2370 and 2371 is supported by the Commission's administration of the bank tax. For a period of approximately 13 years, the Commission levied a tax on "net income," similar to the Tennessee tax on "net earnings" in *Memphis Bank*, which included income earned on securities and other obligations of the United States government and excluded interest income on obligations of the State of Oklahoma and political subdivisions thereof.

The present action is squarely controlled by the decision in *Memphis Bank* which is directly in point. In *Memphis Bank*, the United States Supreme Court found the Tennessee excise tax on banks discriminated in favor of obligations issued by Tennessee and its political subdivisions and against federal obligations because the tax included in the tax base interest income from federal debt obligations whereas it excluded interest from securities issued by Tennessee and its political subdivisions. *Memphis Bank*, 459 U.S. at 398, 103 S.Ct. at 696. The Oklahoma bank tax in question is identical in operation and effect to the tax invalidated in *Memphis Bank*.

Appellee argues that the facts in *Memphis Bank* are distinguishable from those present herein. Appellee points out that there the discriminatory tax levied was a local tax rather than a state tax. However, the *Memphis Bank* court framed the issue, "whether a state or local tax is 'nondiscriminatory' within the meaning of § 742." The Court's analysis was not dependent upon the fact that the tax was a local tax as opposed to a state tax. In addition, appellee argues that in *Memphis Bank* the claimants paid the bank tax under protest whereas here no protest was made by claimants when the bank tax was

paid. In Oklahoma, payment under protest is not a requirement for the filing of refunds of taxes paid under 68 O.S. 1981 §§ 227 and 2373. *See Sun Oil Company v. Oklahoma Tax Commission,* 620 P.2d 896, 898 (Okla.1981) (refund pursuant to § 227). It is our opinion that these differences are an untenable basis for distinguishing between the two cases and are, thus, without significance in our analysis of this appeal. The thrust of the *Memphis Bank* decision is that a tax is constitutionally invalid if it discriminates against the federal government and those with whom it deals.

Therefore, we conclude that §§ 2370 and 2371, as written and applied, are invalid under 31 U.S.C. § 742 in that the Oklahoma bank tax discriminates in favor of securities issued by Oklahoma and its subdivisions and against federal obligations by including interest on federal obligation in the basis of the tax while excluding interest on obligations of Oklahoma and its subdivisions. "We need not reach the question whether the tax may be characterized as a 'franchise tax' or other nonproperty tax 'in lieu thereof'" for we find the provisions of §§ 2370 and 2371 discriminate against federal obligations.

## II.

The crux of the litigation now turns on whether our foregoing conclusion of the unconstitutionality of §§ 2370 and 2371 should be applied retroactively or prospectively only from January 24, 1983, the date of the United States Supreme Court's decision in *Memphis Bank,* and thus limiting refunds and exclusions accruing after the date of such decision.

Appellee urges prospective application. The Commission's Order on p. 5 states that:

"Retrospective application of the *Memphis Bank* case to Oklahoma tax on banks in lieu of income tax and exclusive and in lieu of all other state taxes will allow the banks virtual state tax immunity."

The Order further provides on p. 6 that:

"[A]ll claims for refund of bank taxes accrued and voluntarily paid pursuant to

68 O.S. 1981 §§ 2370 and 2371 and prior to the final decision in *Memphis Bank and Trust Company v. Riley C. Garner, Shelby County Trustee, et al.* [459 U.S. 392, 103 S.Ct. 692, 74 L.Ed.2d 562], U.S. Supreme Court No. 81–1613 decided January 24, 1983, 51 L.W. 4104, shall be and hereby are denied; that all exclusions from net income for calculations of bank tax liability accrued prior to the *Memphis Bank* case but presently unpaid shall be and hereby are denied; ...."

Appellee additionally advocates in its Answer Brief prospective application of the *Memphis Bank* case to the Oklahoma tax on banks for the period from enactment in 1971 until the 1983 amendments.

Appellants counter that §§ 2370 and 2371 are invalid from the date those provisions became effective on June 22, 1971, and that claims for refunds for any amounts paid pursuant since that date should be honored in reliance upon *Sun Oil Co. v. Oklahoma Tax Commission,* 620 P.2d 896 (Okla.1980).

In *Great Northern Railroad v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932), the United States Supreme Court first gave sanction to the prospective-limitation approach. The Court, speaking through Justice Cardozo, stated therein that the federal Constitution is silent on the subject and the effect of a decision will depend on "the juristic philosophy of the judges of her courts, their conceptions of law, its origin and nature." *Id.* at 365, 53 S.Ct. at 149. There, the Court overruled a decision holding shippers entitled to a refund of freight charges paid pursuant to a published tariff approved by a state agency to the extent that the charges exceeded those fixed by a later administrative reduction ordered by said agency, but declined to apply its decision to contracts entered into prior to the date of that decision.

The Court in *Memphis Bank* does not expressly address the specific issue of retroactivity. Appellants argue, however,

that the Court anticipated the issue of retroactivity and implicitly indicated in its opinion retroactive application as discussed below.

■ It has long been established since Blackstonian jurisprudence that a judicial decision has retrospective effect.[13] However, in recent years a vast body of case law has developed as to the question of prospective or retroactive application.[14] In a case which is particularly instructive on this issue, *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), cited by the litigants, the United States Supreme Court enunciated and applied a three part test for the determination of the application of United States Supreme Court decisions in the context of civil litigation. The threshold requirement in applying a decision prospectively only is that the decision in question makes a "clear break with the past" so as to constitute a change in the law as established by previous decisions. A court then is to balance the merits and demerits of prospective or retrospective operation, looking at the history and purpose of the new rule announced by the Court, and any inequity that would attend its retroactive application. *Id.* at 106–107.

We will, therefore, first examine the circumstances of this appeal to determine whether the constitutional rule in *Memphis Bank* presents a "clear break with the past." The first factor of the test as stated in *Chevron* is as follows:

"First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see, e.g., *Hanover Shoe v. United Shoe Machinery Corp.*, supra [392 U.S. 481] at 496 [88 S.Ct. 2224 at 2233], 20 L.Ed.2d [1231] at 1243 [1968], or by deciding an issue of first impression whose resolution was not clearly foreshadowed, see, e.g., *Allen v. State Board of Elections*, supra [393 U.S. 544] at 572 [89

S.Ct. 817 at 835], 22 L.Ed.2d [1] at 20 [1969]." Id. at 106, 92 S.Ct. at 355.

Appellee argues that the *Memphis Bank* decision defined new principles of law as to state taxation of banks. Appellee notes the language of the Court which indicates it decided an issue of first impression:

"We have not previously had occasion to determine whether a state or local tax is 'nondiscriminatory' within the meaning of § 742. However, we have frequently considered this concept in our decisions concerning the constitutional immunity of federal government property, including bonds and other securities, from taxation by the States, our decisions have treated § 742 as principally a restatement of the constitutional rule. See, e.g., *New Jersey Realty Title Ins. Co. v. Division of Tax Appeals*, 338 U.S. 665, 672, 70 S.Ct. 413, 417, 94 L.Ed. 439 (1950); *Missouri Ins. Co. v. Gehner*, 281 U.S. 313, 321–322, 50 S.Ct. 326, 328, 74 L.Ed. 870 (1930)." 459 U.S. at 397–98, 103 S.Ct. at 696–97 (1983).

Appellants concede the *Memphis Bank* case is a case of first impression as to the issue of discrimination. However, appellants focus on the second sentence of the above quoted language and contend that the constitutional issue of immunity of the federal government from state taxation and the supremacy of such federal law over state law had been previously considered by the United States Supreme Court. Appellants argue that such language intimates that the *Memphis Bank* decision was foreseeable and, thus, is to be applied retroactively. It is arguable that previous case law foreshadowed the *Memphis Bank* pronouncement. It is equally persuasive that the type of bank tax in question might reasonably have been assumed to be constitutional based on the longstanding and widespread practice of various states to which the United States Supreme Court had not specifically spoken.

Appellee notes that Justice O'Connor, in her concurring opinion in *Arizona Govern-*

---

**13.** 1B Moore's Federal Practice para. 0.402 (2d ed. 1984).

**14.** *See* cases collected in Supreme Court Decisions: Retroactivity, 65 L.Ed.2d 1219.

*ing Committee v. Norris,* 463 U.S. 1073, 103 S.Ct. 3492, 77 L.Ed.2d 1236 (1983), found justification for prospective application utilizing the *Chevron* three-prong test notwithstanding failure to satisfy the first element of such test. In a per curiam opinion the Court held consistent with the position expressed in Part III of the opinion of Justice Powell, which was joined by four members of the Court, that the decision that Arizona's voluntary pension plan violates Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e et seq.] shall be applied prospectively only with the benefits derived from contributions made prior to the decision being calculated as provided by the existing terms of the existing plan. The Court's prospective holding rests on the finding that an employer reasonably could have assumed the plan lawful and a retroactive remedy would have had a potentially devastating impact financially on employers. *Norris,* 103 S.Ct. at 3509–3510. Appellants attempt to distinguish the *Norris* decision by arguing that such case has application only to situations dealing with violations of Title VII and, therefore, is not instructive in the instant matter. We disagree. Although the issue decided in *Norris* involved "the narrow reach of Title VII in the particular area of the insurance industry," the application of the Court's decision in *Norris* still lends guidance to our determination of application of *Memphis Bank* to this case. The *Norris* Court recognized that retroactive operation is generally applied in the typical Title VII case; however, the Court looked to the practical effect of retroactivity and focused on the magnitude of burden that could be imposed on the State of Arizona in allowing prospective relief. These concerns are precisely those present in this case. Accordingly, we will proceed to examine the other elements of the test set forth in *Chevron.*

The *Chevron* Court stated the second factor of the test in determining retroactivity as follows:

"Second, it has been stressed that 'we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' *Linkletter v. Walker, supra* at [381 U.S. 618] 629 [85 S.Ct. 1731 at 1737], 14 L.Ed.2d [601] at 608 [1965]." *Chevron,* 404 U.S. at 106–107, 92 S.Ct. at 355–56.

The *Memphis Bank* opinion in analyzing § 742 quoted with approval *Smith v. Davis,* 323 U.S. 111, 117, 65 S.Ct. 157, 160, 89 L.Ed. 107 (1944), wherein the Court found Congress' intent in enacting the exemption set forth in § 742 was " 'to prevent taxes which diminish in the slightest degree the market value or the investment attractiveness of obligations issued by the United States in an effort to secure necessary credit.' " The obvious effect of the federal exception is to encourage banks to invest in federal obligations. Retrospective application would not impair the borrowing power of the federal government, although to require payment of refunds would not necessarily further the accomplishment of the purpose of the rule to encourage banks to invest in federal obligations where investments were made before the decision was rendered. Retroactive application is not necessary to cure the discriminatory Oklahoma bank tax law in light of the fact that the Commission may have reasonably believed that §§ 2370 and 2371 were valid and the Commission promptly cured its administration of such statutes after the *Memphis Bank* decision. Moreover, the Oklahoma Legislature has since amended the bank tax to conform to the mandates of *Memphis Bank.* The rule in *Memphis Bank,* thus, can be adequately effectuated without retroactive application.

Finally, the *Chevron* Court looks at any inequity or hardship incurred by retroactive application in the third factor of the test:

" '[W]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the injustice or hardship by a holding of nonretroactivity.' *Cipriano v. City of Houma, supra* [395 U.S. 701] at 706 [89 S.Ct. 1897 at

1900], 23 L.Ed.2d [647] at 652 [1969]." *Chevron*, 404 U.S. at 107, 92 S.Ct. at 355.

This Court in *Texas Company v. Oklahoma Tax Commission*, 207 Okl. 385, 249 P.2d 985 (1952), authorized the retroactive application of a United States Supreme Court decision and affirmed the district court's denial of a refund of gross production taxes. In so holding, we recognized the policy considerations of taking from the State taxes which were rightfully due under United States Supreme Court decisions and "thus depriving the State of funds which rightfully belong to it and which could well be used by it in the exercise of its governmental functions." *Id.* at 989. Although the *Memphis Bank* case does not involve a reversal of a United States Supreme Court decision as in *Texas Company*, it does decide a new principle of law. Appellee alleges that a retroactive holding by this Court would result in approximately 35 million dollars of refund of taxes paid by appellants and other claimants. Because the burden would fall on the State of Oklahoma, retroactive or prospective application, thus, has particular import upon State revenues as stated in the Commission's Order. Justice Powell captured the significance of the financial burden on the State as posed here by his expression in the concurring part of his separate opinion in *Norris:*

> "Imposing such unanticipated financial burdens would come at a time when many States and local governments are struggling to meet substantial fiscal deficits. Income, excise and property taxes are being increased. There is no justification for this Court, particularly in view of the question left open in Manhart, to impose this magnitude of burden retroactively on the public. Accordingly, liability should be prospective only." *Norris*, 103 S.Ct. at 3510.

Although the new principle of law established in *Memphis Bank* might be characterized as merely a progression from former decisions, it was not foreseen by the Commission, nor by the Oklahoma Legislature. Furthermore, the considerations of excessive financial disruption to the State of Oklahoma strongly compel a prospective application in these circumstances.

In support of their claims for refund, appellants direct our attention to the cases of *Cox v. Dillingham*, 199 Okl. 161, 184 P.2d 976 (1947) and *City of Hartshorne v. Dickinson,*. 207 Okl. 305, 249 P.2d 422 (1952). These cases are inapposite and do not control this appeal because the emerging new doctrine of prospective operation was not applied in these cases.

Appellants also note the recent case of *Bartow County Bank v. Bartow County Board of Tax Assessors*, 251 Ga. 831, 312 S.E.2d 102 (1984), *rev'g* 248 Ga. 703, 285 S.E.2d 920 (1982), *vacated*, 463 U.S. 1221, 103 S.Ct. 3563, 77 L.Ed.2d 1402 (1983). There, the United States Supreme Court vacated the judgment of the original decision of the Georgia Supreme Court which had upheld the inclusion of federal securities in computing the Georgia bank shares tax. The United States Supreme Court remanded the case for further consideration in light of *American Bank & Trust Co. v. Dallas County*, 463 U.S. 855, 103 S.Ct. 3369, 77 L.Ed.2d 1072 (1983). On remand, the Georgia Supreme Court held the state statute unconstitutional and remanded the case for further proceedings consistent with a tax computation method which removed from the tax base the amount of net worth represented by federal securities. The *Bartow* Court does not address the issue of retroactivity. Hence, *Bartow* is not controlling on the determination of retroactive or prospective application of *Memphis Bank* to this appeal.

Upon consideration of all the foregoing, we conclude that the application to this appeal of the *Memphis Bank* decision shall operate prospectively from January 24, 1983, and not retroactively. Our decision in the instant case shall be understood to affect the rights, positions and actions of taxpayers which have claimed, or will claim, refunds to the Oklahoma Tax Commission, or in which appeals have been taken to this Court.

For the reasons stated herein, Order No. 83–05–10–15 of the Oklahoma Tax Commission is VACATED IN PART AND AFFIRMED IN PART.

DOOLIN, V.C.J., LAVENDER and WILSON, JJ., ROBINSON, Special Judge (appointed in place of KAUGER, J., who disqualified), concur.

SIMMS, C.J., concurs in part, dissents in part.

OPALA and SUMMERS, JJ., concur in part I, dissent to part II.

HARGRAVE, J., dissents.