**MIDLAND BANK & TRUST COMPANY, Union Planters National Bank, National Bank of Commerce, Commercial and Industrial Bank, Appellees,**

v.

**Martha B. OLSEN, Commissioner of the Department of Revenue, for the State of Tennessee, appellant.**

Supreme Court of Tennessee, at Jackson.

Sept. 29, 1986.

David C. Scruggs, Andrew H. Raines, Frank N. Carney, Evans, Petree, Cobb & Edwards, Memphis, for appellees.

W.J. Michael Cody, Atty. Gen. & Reporter, Joe C. Peel, Asst. Atty. Gen., Nashville, for appellant.

## OPINION

FONES, Justice.

The Commissioner of Revenue appeals from a decree of the trial court awarding four Memphis banks recovery of 1982 corporate excise taxes, paid under protest, attributable to the inclusion of interest earned on obligations of the United States.

That result was mandated by the decision of the United States Supreme Court in *Memphis Bank & Trust v. Garner*, 459 U.S. 392, 103 S.Ct. 692, 74 L.Ed.2d 562 (1983), and the unpublished opinion of this Court in that case following remand.[1]

In *Garner*, plaintiff bank sought recovery of the local bank tax paid under protest for the years 1977–78, imposed by Acts of 1977, chapter 140, codified in T.C.A. § 67–751–763. That act required each bank doing business in Tennessee to pay local governments three percent of the net earnings for the next preceding fiscal year and directed that, "The net earnings shall be calculated in the same manner as prescribed by T.C.A. Title 67, chapter 27." The United States Supreme Court concluded that net earnings as defined in T.C.A. 67–2704 produced the following result:

> Under the statute, net earnings include interest received by the bank on the obligations of the United States and its instrumentalities, as well as interest on bonds and other obligations of states other than Tennessee, but exclude interest

1. *Memphis Bank and Trust v. Garner*, filed February 27, 1984, at Jackson, Tennessee.

on obligations of Tennessee and its political subdivisions.[3]

[3] For purposes of the bank tax, the term "net earnings" is defined as "[f]ederal taxable income" with specified adjustments. Tenn.Code Ann. § 67–2704 (Supp.1982). "Federal taxable income" includes interest on obligations of the United States and its instrumentalities, but does not include interest on state or municipal obligations. See 26 U.S.C. § 103(a). Tennessee Code Ann. § 67–2704(b)(2)(B) adjusts "federal taxable income" by adding "[i]nterest income earned on bonds and other obligations of other states or their political subdivisions, less allowable amortization." However, no similar adjustment is made to include interest on obligations of the State of Tennessee or its political subdivisions in the definition of "net earnings" subject to the bank tax.

459 U.S. at 394, 103 S.Ct. at 694.

The single issue considered by the United States Supreme Court in *Garner* was whether the Tennessee local bank tax was a "nondiscriminatory franchise or other nonproperty tax in lieu thereof," under 31 U.S.C. § 742. That section has been treated as a restatement of the constitutional rule of federal tax immunity established in *McCulloch v. Maryland*, 17 U.S. (4 Wheat) 316, 4 L.Ed. 579 (1819). *See Memphis Bank & Trust v. Garner*, 459 U.S. at 397, 103 S.Ct. at 695.

The conclusion reached in *Garner* was as follows:

It is clear that under the principles established in our previous cases, the Tennessee bank tax cannot be characterized as nondiscriminatory under § 742. Tennessee discriminates in favor of securities issued by Tennessee and its political subdivisions and against federal obligations. The State does so by including in the tax base income from federal obligations while excluding income from otherwise comparable state and local obligations. We conclude, therefore, that the Tennessee bank tax impermissibly discriminates against the Federal

Government and those with whom it deals.

459 U.S. at 398–99, 103 S.Ct. at 696.

■ The 1982 tax at issue in the case presently before the Court was calculated in accord with the definition of net earnings in T.C.A. § 67–2704, unchanged from the definition condemned as discriminatory in *Garner*. Here, it was collected by the State as a general corporate excise tax, whereas in *Garner* the tax was payable to county and municipal governments, a difference of no significance. In *Commerce Union Bank v. State Board of Equalization*, 615 S.W.2d 151 (1981), we said, with respect to the local bank tax involved in *Garner*:

Nevertheless it is a corporate excise tax and must be so regarded and administered. Rules and regulations regarding the calculation and administration of the regular corporate excise tax are pertinent, because the tax is to be calculated in the same manner as that tax.

615 S.W.2d at 152.

The local bank tax, T.C.A. § 67–751–763, was repealed by Public Acts 1983, chapter 227. T.C.A. § 67–2704, now codified as § 67–4–805 has been amended so as to include in the calculation of taxable earnings, Tennessee obligations and federal obligations thus achieving the equality of treatment mandated in *Garner*.

The Commissioner contends that in *First National Bank of Atlanta v. Bartow County Bd. of Tax Assessors*, 470 U.S. 583, 105 S.Ct. 1516, 84 L.Ed.2d 535 (1985) the United States Supreme Court authorized a formula for the exclusion of interest earned on federal obligations that should be employed in this case that would substantially reduce the recovery of plaintiff banks.

The short answer to that contention is that *Bartow* involved the *extent of the exemption* of federal obligations that a state must grant under 31 U.S.C. 3124(a).[2]

**2.** 31 U.S.C. 3124(a), enacted September 13, 1982, revised, "without substantial change" 31 U.S.C. 742, the exemption and nondiscriminatory statute applied in *Garner* in holding the Tennes-

see local bank tax was unconstitutional as discriminatory, with no consideration of the scope of the exemption.

No discriminatory issue existed in *Bartow* as both Georgia obligations and federal obligations were included in the base of the tax. In *Garner* and the case at bar, discrimination was the issue, not the scope of the exemption. In addition, the tax in *Bartow* was a property tax whereas the tax in *Garner* and the present case is a "franchise or other non-property tax," [3] and as such would be excluded from the exemption test set forth in 31 U.S.C. 3124(a) [formerly 31 U.S.C. 742] *if* found to be nondiscriminatory. Having been adjudged discriminatory by the United States Supreme Court because of the total exclusion of Tennessee obligations, the federal obligations must be given identical treatment and the *Bartow* formula is clearly inapplicable.

■ If the Tennessee Corporate Excise Tax was a property tax and if this Court had the power to amend T.C.A. § 67–2704 so as to include Tennessee obligations in the base of the tax along with federal obligations, then we could authorize use of the *Bartow* formula. We rejected an invitation by the Commissioner to amend that section in our unpublished opinion of February 27, 1984 in *Garner,* as follows:

> In the alternative, appellants ask this Court to elide from the general corporate excise tax statutes in force at all times material to this litigation the exemption from taxation of state securities so as to include as net earnings interest on both state securities and federal securities. This, of course, is entirely contrary to the provisions contained in the corporate excise tax statutes. It amounts to the imposition by statutory construction of a tax on earnings which the Legislature specifically exempted and which were not required at any time pertinent to this litigation to be included for taxation. It is our opinion that the doctrine of elision does not authorize this Court to remove the exemption of state securities con-

trary to express legislative direction and to subject them to taxation, even though the exemption itself has been held to be discriminatory.

We continue to adhere to that ruling.

The Commissioner urges the Court to give the *Garner* decision a prospective only application.

■ A ruling which is purely prospective governs future cases and does not apply even to the parties before the Court. *Linkletter v. Walker,* 381 U.S. 618, at 621–22, 85 S.Ct. 1731, at 1733, 14 L.Ed.2d 601 (1965). However, the United States Supreme Court, and this Court, have frequently applied a ruling to the parties before the Court and on some occasions to the parties before the Court and those having cases in the pipeline. *See, e.g., Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; *Linkletter v. Walker, supra;* and *Luna v. Clayton,* 655 S.W.2d 893 (Tenn. 1983); *Cumberland v. Capital Corp. v. Patty,* 556 S.W.2d 516 (1977).

The Commissioner of Revenue was a party to *Garner* and on remand of that case to this Court, subsequent to January 23, 1983, raised numerous defenses, but did not raise the issue of prospective/retrospective application of the United States Supreme Court's decision. The plaintiffs in that case were allowed to take advantage of the *Garner* decision.

■ In the present case, the Commissioner implies, without presenting any argument or authority, that the 1982 excise tax involved here would require retrospective application of *Garner* in order to allow these plaintiffs to recover. In our opinion allowing recovery in this case does not involve a retrospective application of *Garner* but to the contrary involves a prospective application. The 1982 tax was not due when *Garner* was rendered and the cause of action of these plaintiffs to contest the

---

**3.** In *Garner,* the United States Supreme Court held it unnecessary to determine whether the Tennessee local bank tax was a franchise tax or another non-property tax, because, "the nondiscrimination requirement applies to both fran-

chise taxes and other non-property taxes." 459 U.S. at 396, footnote 6, 103 S.Ct. at 695 footnote 6. It is thus inescapable that the United States Supreme Court has characterized the tax at issue as a non-property tax.

constitutionality of the discriminatory assessment of 1982 taxes did not accrue until they paid their 1982 taxes under protest, which they did subsequent to the ruling in *Garner.* They filed suit on June 30, 1983, within the period of limitation following payment prescribed by law. In our opinion, the date that determines prospective or retrospective application of a judicial decision is the date that the cause of action accrues, not the end of the tax year involved.

 A direct analogy exists between the issue here, whether the end of the tax year or the accrual of the cause of action governs the prospective/retrospective application, and the position of tort plaintiffs who were caught in the *Jackson v. General Motors*[4] dilemma of having their cause of action barred by a statute of limitations before the cause of action accrued. In *McCroskey v. Bryant,* 524 S.W.2d 487 (Tenn.1975), we applied the principle that a statute of limitations does not begin to run until a cause of action accrues to overrule *Jackson.* Reason and logic dictate the application of that principle to the issue whether the actions of these plaintiffs are in a pre-*Garner* or post-*Garner* position. We therefore hold that allowing these plaintiffs to recover 1982 taxes due and paid subsequent to January 23, 1983, does not involve a retroactive application of *Garner* and is consistent with our application of the United States Supreme Court's decision in that case to the parties before the Court.

We have given careful consideration to the Commissioner's reliance upon *First of McAlester Corp. v. Oklahoma Tax Commission,* 709 P.2d 1026 (Okla.1985). The Oklahoma court had 268 appeals pending before it seeking refunds of Oklahoma bank excise taxes in reliance upon *Garner.* At least some of the claims were for taxable years from 1971 through 1981. The opinion recites that some of the appellants asserted that they would file 1982 returns excluding interest in reliance on *Garner,* but the decision is silent as to whether it considered 1982 taxes as prospective or retrospective. We therefore do not find the Oklahoma court's reasoning in applying *Garner* prospectively relevant to this case because the issue of retroactive application for tax years earlier than 1982 is not before us and is expressly reserved.

The decree of the trial court is affirmed and this case is remanded for further proceedings according to law. Costs are adjudged against the Commissioner of Revenue.

BROCK, C.J., and COOPER, HARBISON and DROWOTA, JJ., concur.

---

4. 223 Tenn. 12, 441 S.W.2d 482 (Tenn.1969).